Morphy, J.
This action is brought upon a promissory note of the defendant, endorsed by A. Dreux, and secured by mortgage on certain slaves purchased by the drawer at a sale made at the instance of the syndic of Laroque Turgeau’s creditors. The petition alleges, that the syndic, having given this note to the Consolidated Association Bank in part payment of a debt of Laroque Turgeau, subrogated the bank to all the rights of the creditors of the insolvent under the aforesaid mortgage ; and that, in *454 consequence of an agreement and settlement between the bank and the plaintiffs, the latter became the owners of the note, and were subrogated to all the rights of the bank.
The defence set up is, that the syndic of Laroque Turgeau’s creditors was not authorized by any order of the court, and could not, without such order, make the transfer of the note and the deed of subrogation to the Consolidated Association; that the president of the board of managers of that bank had no legal authority to transfer said note to the plaintiffs ; that, under the law of the 5th of February, 1842, the defendant had acquired the right of availing himself of the benefit of the dead weight, i. e. of obtaining a delay of six, twelve, eighteen and twenty-four months from the maturity of said note, on paying ten per cent on the amount of the same, and the interest on the balance, which he offered to do, both to the bank and to the petitioners, in conformity to said law ; that as the bank held his note on the 22d of February, 1842, and the plaintiffs before receiving it were aware of the defendant’s rights under the law, they are not in a better situation than the bank, and are bound to allow him the above mentioned delay on the same terms and conditions. There was a judgment below in favor of the plaintiffs, and the defendant has appealed.
The debt of Laroque Turgeau to the Consolidated Bank appears to have been secured by a special mortgage upon the negroes for whose price the note sued on, with two others of an equal amount, was given by the defendant. As the proceeds of the sale were probably coming to the bank, the syndic turned over the note to that corporation in part payment, and subsequently subrogated it by authentic act to all the rights of the creditors of Laroque Turgeau whom he represented. Whether he had authority to do this or not, is a question with which the defendant has no concern. The creditors of the insolvent alone can complain, and the defendant is not called upon to protect their rights.
In relation to the transfer of the note to the petitioners, it appears, that after the Consolidated Association had gone into liquidation, under the law of the J 4th of March, 1842, providing for the liquidation of banks, J. B. Plauché & Co. who were creditors *455 of that institution by reason of deposits previously made, agreed to receive the defendant’s note in payment, and that the transfer was accordingly made to them by the president of the board of managers, under a resolution of the board bearing date the 22d of June, 1842, giving to him and a committee appointed to that effect, full power to take all necessary steps to diminish the cash liabilities of the bank. This resolution clearly authorized the transfer of the note, as one of the means of reducing the cash liabilities of the institution. The course pursued was moreover ratified by the bank, which, although it had not endorsed this paper, agreed, on the application of the plaintiffs, to guaranty its payment.
The third section of the law of the 5th of February, 1842, upon which the defendant relies, declares : “ That it shall be lawful for the respective boards of directors, to consider the whole of the debts due them on the passage of this act as forming part of their 1 dead weightand it is hereby made the duty of the respective boards of directors, to renew such debts now due, or that may mature hereafter, on the application being made to that effect by the respective parties, on the following conditions: 1st. The payment of ten percent, exclusive of interest, on the maturity of the debts, and the balance at twelve months, renewable until fully paid, on the payment of fifteen per cent each year on the original amount, provided ample and satisfactory security on real estate be furnished by the applicant. 2d. The payment of ten per cent, exclusive of interest, on the maturity of the debts, and the balance by equal instalments of six, twelve, eighteeen and twenty-four months, provided the applicant furnish good and sufficient personal security,” &e.
The evidence does not show that the note sued upon was held by the bank at the date of the passage of this act. It is only in relation to debts due to the bank at that time, that its debtors were entitled to claim the delays therein granted; but were it even admitted that this note came into the possession of the bank before the passage of the law, and that it was entitled to the benefit of the dead weight, it is not shown that the defendant took the necessary steps to enjoy this privilege. The law of 1842 *456 evidently contemplated that every debtor wishing to have the extension of time provided for, should make a direct application to the board, stating the security he proposed to furnish, and that such security, whether real or personal, should be passed upon and found satisfactory by the board, before they allowed the applicant such extension of time. The record shows, that the defendant made no application whatever to the board, but at the maturity of his note, left at the bank a note at one year, with a curtailment of ten per cent, and an amount in the notes of the Consolidated Bank equal to such curtailment, and the interest on the balance. How this new note was endorsed, or otherwise secured, does not appear. He was informed by one of the officers of the bank that his note could not be renewed, as it was no longer in the possession of the bank, and some time after,he withdrew the money he had deposited. Under this evidence it is difficult to consider the defendant as having complied with the requirements of the law of 1842, so as to entitle him to the dead weight, even had his note been yet held by the bank. He made no application to the board, tendered no security for the extension of time, and offered in renewal a note at one year, instead of one at six months, for the first instalment of the delay of 6, 12, 18 and 24 months, which he avers he was entitled to. In addition to this, he has since withdrawn the money he had deposited as one of the conditions necessary to entitle himself to the benefit of the dead weight, abandoning as it were his rights to it, if he had ever acquired any.

Judgment affirmed.