THOMAS SUMMONS ET ALS.          ;          NO. 8377

VS                    **8377**          COURT OF APPEAL

JOSEPH L. LANDRY                     PARISH OF ORLEANS

: : : : :

- - -

WILLIAM A. BELL, JUDGE.

- - -

Court of Appeal

FILED May 28/23

By WILLIAM A. BELL, Judge.

As we appreciate this case, after a careful considera-
tion of the record, briefs and arguments presented, the issue in-
volved is mainly one of law, the facts not being seriously dis-
puted on appeal. It is contended by defendant and appellant that
the controversy is an action in boundary and not a petitory ac-
tion, as claimed by plaintiffs and as found in the opinion of
the trial court. The land to which plaintiffs claim joint owner-
ship--and about the entire upper half of which is involved in
this suit--is described as follows:

> "A certain tract or portion of land, sit-
> uated in the Parish of Saint James, on the left
> bank of the Mississippi River, at about sixty-two
> miles above the City of New Orleans, measuring
> One eight of an arpent front by Forty arpents in
> depth, closing more or less in the rear, bounded
> above by the property of Wm. Joseph Dugas, Cleo-
> phas Dugas and Sosthene Blanchard, and below by
> those of Evariste Part."

The learned trial judge has so clearly recited the ma-
terial facts as appear from the record of this case, that we
adopt his findings as follows:

> "The evidence shows that these plaintiffs
> acquired this property by inheritance from their
> father, who had died more than 30 years before,
> and who had purchased from the author in title in
> 1871. Their father had lived on it from the time
> of his acquisition up to his death, and they (his
> children) have always occupied it since. The prop-
> erty had a width of twenty-four feet (1/8 of an
> arpent as the deed calls for) and the land on the
> lower side between this property and that of Part
> has always been recognized as the true and correct
> boundary line. The line on the upper side, the
> one in dispute, has always been recognized also by
> defendants authors in title as correct, until the
> year 1912, when the defendant, Landry, employed
> the services of a surveyor, who surveyed Landry's
> property and arbitrarily placed the lower line
> thereof, that is, the line between Landry's prop-
> erty and that of plaintiffs, some 11 or 12 feet
> further than it was, thus encroaching on plain-
> tiffs' property to that extent * * *. The testi-
> mony of Waties leaves no doubt in my mind that the
> lower line of plaintiffs, the Part boundary, is a
> well established and defined line on which he found
> corners, marks and posts, and that the width given
> in plaintiffs' deed, 24 feet, would carry and lo-
> cate plaintiffs' upper line between 11 and 12 feet

beyond the line placed by the engineer who surveyed Landry's property. Besides, he testifies to having seen indications of old fences, etc., on the line between plaintiffs and defendant, in the front. Waties' testimony is corroborated by that of another surveyor, D. F. Woods, who went on the property in 1917, and also saw evidences of the old line referred to. Besides the testimony of these two surveyors, I find an abundance of positive testimony, not only by the plaintiffs themselves, but by other parties, one, the adjoining owner, Part, another, a man who cultivated both properties, that of plaintiffs and that of Landry, at the time it was owned by Blanchard, to the effect that there was a well established, fixed and determined line which had existed there for more than thirty years, up to which line plaintiffs themselves, or tenants for them, had always cultivated the property."

In the light of the above facts, we have carefully considered the case of Andrews v. Knox, 10 Ann., 604, cited by counsel for defendant, who urges the similarity of that case with the instant case as *like actions* for the fixing of boundaries between contiguous tracts of land. It is contended that the court held there, and that we should now hold, that plaintiffs *merely because* prayed to be adjudged owner of any portion of the land within the boundary, *is not changed* the character of the action from one of boundary to one of petitory action. In the cited case, we do not find, as is admitted in the present case, that the defendant had fixed the limits between him and his adjoining neighbor without giving the latter notice to be present (all against the provisions of Article 838 R.C.C) but, on the contrary, that the plaintiff in the cited case averred "that the defendant, although requested have the boundary dividing the tract fixed in accordance with their respective titles, refused to do so." This allegation clearly admitted the non-existence of boundaries and clearly showed the desire to establish same in accordance with law. In the cited case no damages were prayed for though encroachment was averred, and no damages were due because the action was clearly one of boundary. In the instant case, not only does the plaintiff set up his ownership for over thirty years, praying for judgment recognizing same and restoring him to possession of that portion from which he has been evicted, but he also prays for damages

which could not be due in an ordinary action for boundary.

We agree with the trial judge that the petition and prayer in these proceedings, though coupled with a prayer for survey, "to re-establish the boundary effaced by defendant," is clearly a petitory action supported by abundance of proof of ownership for more than thirty years. (Bernstein v. Leeper, 118 La., 1098; Opelousas Bank v. Penodin, 121 La., 581).

Tn Blanc v. Duplessis, 13 La., 334, the plaintiff brought what the court found to be a petitory action, in which it was alleged that the defendant, an adjoining proprietor, had encroached upon plaintiff's land. The plaintiff there prayed that the land encroached upon be decreed to belong to him, and in the same proceedings he also prayed that the boundary between his and defendant's lands be fixed and established. In that case as in the one before us, parole evidence objected to was properly admitted to prove certain ancient marks and boundary lines connected with the actual possession of the parties. This case was most similar to the one now under consideration, both as to the form of pleadings and the rule of evidence adopted on the trial. Our learned brother of the district court cited the above case and we think he has correctly based his opinion upon the law therein enunciated.

Appellees have answered the appeal herein taken by praying for amendment of that part of the judgment which has allowed them only $50.00 damages and they now pray for $1,000.00 damages for deprivation of their property at the rate of $100.00 per year from 1913 to 1922. The judge of the lower court found difficulty in estimating the damages which should be justly allowed. According to the testimony of one of the expert surveyors, it appeared that the quantity of land from which defendant had evicted plaintiff was estimated at 1.43 acres. Taking the evidence of

another witness that corn land in that neighborhood had rented at $5.00 per acre per year, the court allowed plaintiffs $50.00, based on that valuation. We find, however, that plaintiffs did not use the land for raising corn only but largely for the cultivation of melons and other vegetables, and that the whole of plaintiffs' land (not only the half from which they were evicted), when so cultivated, should have yielded profit from about ninety to one hundred dollars per year. Three witnesses, two of whom are the plaintiffs, so testified. Their evidence is not rebutted. We think full justice will be done in this case by increasing the amount of damages from $50.00 to $300.00, and that the judgment, as thus amended, should be affirmed.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the judgment herein appealed from be and the same hereby is amended, so as to increase the damages allowed plaintiffs from $50.00 to $300.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in all other respects the judgment appealed from be and the same hereby is affirmed, defendant to pay all costs in both courts.

JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.

MAY 28, 1923.